**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**UNITED STATES OF AMERICA**

v.                              Case No. 4:06-CR-00333 GTE

**RICHARD TURNER SMITH**

### ORDER DENYING MOTION TO QUASH

Before the Court is a Motion to Quash filed by the United States of America ("government"). Therein, the government seeks to quash three subpoenas issued on or about April 16, 2007 by defense counsel to: (1) the Director, Division of Banking Supervision and Regulation, Board of Governors of the Federal Reserve System; (2) the Federal Deposit Insurance Corporation; and (3) the Arkansas State Bank Department. Defendant has responded to the motion. For the reasons stated herein, the Court denies the government's motion.

The government complains that the subpoenas in question are beyond the scope of Fed. R. Crim. P. 17, that the subpoenas have been issued seven months prior to trial, and that the subpoenas were issued as deposition subpoenas when in fact only documents are sought thereby.[1]

Federal Rule of Criminal Procedure 17(c)(1) provides that a subpoena may order a witness to produce "any books, papers, documents, data, or other objects the subpoena designates." The provision further provides that the court "may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."

A moving party may gain access to materials pursuant to Rule 17(c) based upon a

---

[1] The Court agrees with Defendant that the latter argument places form over substance. The subpoenas make clear that the documents may be produced "in lieu of appearing for deposition."

- 1 -

showing that the subpoenaed materials are (1) relevant; (2) admissible; and (3) requested with adequate specificity. *U.S. v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000)(*citing United States v. Nixon*, 418 U.S. 683 (1974)).  Even where the moving party makes such a showing, "the district court may, in its discretion, determine whether 'the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case.'" *Id.*, at 756 (citations omitted).

Here, Defendant Mr. Smith contends the requested materials are crucial to his defense and may completely exonerate him in connection with Count 1, which charges, *inter alia*, that from May 24, 2000 and continuing through October 2002, the Defendant Mr. Smith:

> who was chairman of the board of the Bank of Salem, Salem, Arkansas, the deposits of said banks being insured by the Federal Deposit Insurance Corporation (FDIC), with intent to defraud an agency of the United States, i.e., the FDIC, participated and shared in and received money and benefits through transactions, loans and other acts of the financial institution, in violation of Title 18 United States Code, Section 1005.

(Indictment, Count 1).

More particularly, the government alleges that Mr. Smith solicited persons to invest in David Howell's fraudulent scheme[2] and that he was paid by Mr. Howell for the referral of investors.  It is further alleged that Mr. Smith caused the Bank of Salem and Stephens Security Bank to make unsecured loans to some of the investors he recruited to invest in Mr. Howell's scheme and that he even signed personal loan guarantees for some of these investors.  Mr. Smith allegedly failed to disclose to the banks' Board of Directors that he was receiving fees from Mr. Howell or that he had signed personal guarantees for some of the borrowers.  (See Indictment at ¶

---

[2] David Howell masterminded the investment scheme in question.  Following Mr. Howell's death in October of 2003, the magnitude of the fraud was discovered as the scheme unraveled.  There have been numerous civil lawsuits related to Mr. Howell and his investment scheme, but to the Court's knowledge this is the first criminal prosecution.

10). As of September of 2002, the Bank of Salem is alleged to have had approximately $1,360,000 in outstanding loans to individuals who had invested the loan proceeds with Mr. Howell. Stephens Security Bank is alleged to have had approximately $1,920,000 in similar outstanding loans. (Indictment at ¶ 12).

Mr. Smith contends the subpoenaed documents will reveal that the FDIC was aware of the business dealings between Mr. Smith and Mr. Howell. Mr. Smith further argues that the lack of any "Suspicious Activity Reports" (which Defendant claims FDIC examiners must file in certain situations) may be used as exculpatory evidence. For cause, Mr. Smith argues that the criminal banking violation with which he is charged in Count 1, if it occurred, should have triggered an investigation by the FDIC examiners and the filing of a Suspicious Activity Report.

Mr. Smith further argues that the Federal Reserve Bank and the Arkansas State Bank Department conducted similar bank examinations and would have similarly been on the lookout for suspicious activity during their examinations.

The Court finds that the Defendant has made an adequate showing that the requested documents are relevant, are potentially admissible, and have been requested with adequate specificity. The Court cannot find that the Defendant is using Rule 17 to engage in a fishing expedition. Further, it is difficult to find that compliance with the subpoenas would be unreasonably burdensome or oppressive. None of the three parties has contested the subpoenas and the Defendant represents that they are willing to cooperate.[3]

Defendant also complains that Plaintiff's subpoenas are too early. The trial of this case is

---

[3] Defendant indicates that the terms of a protective order have been agreed upon between the Defendant and some (or all – the record is not clear) of the subpoenaed entities, but that the United States has not executed or returned the proposed Agreed Protective Order. Hopefully, the parties can resolve this issue by agreement following the receipt of this Order.

scheduled for January 28, 2008.  The Court has blocked four weeks for trial.  The subpoenas may generate a large amount of materials, and the defense of this case is likely to be complex.  The Court understands the importance of early preparation in this case so that the parties will be ready for trial in January of 2008.

Finally, the Court notes that the government has suggested that the subpoenas are problematic because they require production of the documents at defense counsel's offices rather than to the Court.  In light of the fact the trial is not until January, the Court is unaware of any reason for requiring the subpoenaed documents to be produced to the Court.  Accordingly, the documents may be produced directly to defense counsel.  The government, of course, shall have the right to inspect and to obtain copies of said documents.  If the government contends that good cause exists for the Court to examine the documents *in camera* prior to their disclosure, then it may so move the Court.

## CONCLUSION

The Court, after considering carefully the respective positions of the parties as stated in their briefs, concludes that the Defendant has the better argument.  Accordingly,

IT IS HEREBY ORDERED THAT the United States of America's Motion to Quash (Docket No. 24) be, and it is hereby, DENIED.

IT IS SO ORDERED THIS  13th  day of June, 2007.

                                               /s/Garnett Thomas Eisele
                                              UNITED STATES DISTRICT JUDGE